Ex Parte Bernard Harris.

No. 13735. Delivered May 20, 1931.
Rehearing Denied June 24, 1931.

The opinion states the case.

*Scott, Casey & Hall* and *Barret Gibson,* all of Marshall, for appellant.

*John Taylor,* County Attorney, of Marshall, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, Judge.—At a hearing before the Honorable Reuben A. Hall, district judge, upon a habeas corpus petition alleging destraint in general terms, appellant was remanded to custody and has appealed to us. He was under arrest by virtue of a capias issued upon a mandate which followed the affirmance of a felony judgment against him.

As far as we comprehend the complaint of appellant, it was that the indictment against him was void because a man sat on the grand jury who could not read and write; also because another man was present

at and participated in the deliberations of said grand jury who was unauthorized so to do. We can not agree with either contention as presented in this record. Neither proposition was so supported before the trial court as to cause us to believe he was wrong in his remanding order. Williams, the alleged illiterate grand juror, was the only witness offered on the question of his ability to read and write. Answering questions he said: "I can read and write a little bit. * * * I can read ordinary typewriting or printing from studying a little bit; I have to get my glasses and study it over a little bit before I can read,—account of my eyes. * * * I can sign my name. * * * It has been a long time since I tried to write a letter. * * * I signed the grand jury report. * * * I can read and write sufficiently to get money from the bank." Neither any statute of this state, nor any decision known to us, makes ineligible pro tanto, for grand jury service a man who can read and write as this witness testified he could.

On the other point made, we note that the transcript of the proceedings had in the trial court starts with the admission or agreement of both the state and defendant, as follows: "That the grand jury was impaneled March 11, 1929, * * * That the grand jury *adjourned* * * * March 15, 1929." It is true that following the agreed statement each side introduced various matters, and that the state introduced what is called a "Report of Grand Jury," of date March 15, 1929, which contains the statement that "The grand jury has permission to recess subject to call at any time during the March term 1929 of this court," but the record here is silent as to who made such report or how the quoted statement came to be a part of same, and said document, if pertinent, was primarily for construction by the trial court in the light of the surrounding facts. All these matters were before the trial court and counsel for both the state and appellant, who had access to them. With this report of the grand jury at hand, both the state and appellant agreed before the trial court that the grand jury had adjourned. Article 372 of our Code of Criminal Procedure plainly provides that when the grand jury is discharged for the term, it may be reassembled at any time during the term, and vacancies therein may be filed. The matter has been fully discussed in Trevinio v. State, 27 Texas App., 372, 11 S. W., 447; Matthews v. State, 42 Texas Crim. Rep., 31, 58 S. W., 86, and Millikin v. State, 107 Texas Crim. Rep., 332, 296 S. W., 547. It appears here that when the grand jury were called together, one of the men who had served thereon was absent. Of course, had this been a reconvening of the original grand jury after a temporary recess, there would have been no need for summoning another man, or completing the panel, since under the law the remaining eleven would and could have functioned as a grand jury. Not so, if they were reimpaneled after being discharged for the term.

See Trevinio v. State, supra. Since a grand jury can not be legally impaneled with more or less members than the twelve fixed by statute, it was imperative, if they were called back after discharge for the term, that there be twelve present and impaneled,—and the act of the court in causing the summons and impanelment of the twelfth man was in entire accord with the precedents and statutes.

Appellant primarily,—and the state in reply,—each presented to this court affidavits which, out of desire to settle the whole controversy, we considered in preparing an opinion heretofore handed down, but which affidavits should not have received our attention, and said former opinion is for that reason withdrawn. The jurisdiction of this court in this case is involved no further than to pass on the questions presented to and passed on by the court below upon the hearing following the granting of the writ. The matters contained in said affidavits should have been investigated, presented and decided in the trial court, and upon the record there made, the appellate jurisdiction of this court being properly invoked, they might have all been before us.

Substituting this for the former opinion which is withdrawn, and giving to appellant the right if he desires to file a motion for rehearing herein as in the first instance, the judgment of the trial court is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Relator still insists that the trial court had no right to re-impanel the grand jury, but that if he did have such right, then nothing appears in the record to show that it was ever re-impaneled or who composed the claimed re-impaneled body which returned the indictment against relator.

We may be confused as to what the record before us shows, but believe it reveals the following: First, that the grand jury was originally impaneled on March 11, 1929. In the order of such impanelment is contained the names of the twelve men composing the grand jury, which included one McDaniel. Second; the grand jury was re-impaneled on April 8th. The order then recites:

"All of the grand jurors for the March term, 1929, being present in open court, with the exception of G. M. McDaniel, who is out of the city, the court instructed the sheriff to select one man to complete the body and O. C. Hope was substituted, and all the grand jurors were sworn by the court and instructed as to their duties, who afterwards retired for deliberations."

From the foregoing recitals it seems clear that the grand jury which was re-impaneled was composed of eleven men who were on the original grand jury, the twelfth man being Hope, who was substituted for

McDaniel. The fact that all the grand jurors were again sworn, including Hope, and instructed as to their duties seems to justify the conclusion that the grand jury was re-impaneled.

It must be confessed that the record is somewhat confusing by the use of the terms "recessed", "adjourned", and "re-convened", as they were applied to the grand jury in question. But it must be borne in mind that the regularity of the court's action is to be presumed, and that the burden is on relator to show the contrary. The court's action in remanding relator must be presumed to have been based upon a finding that the grand jury which returned the indictment against relator was a legally constituted body, and we do not feel authorized under the record before us to hold to the contrary.

The motion for rehearing is overruled.

*Overruled.*